A99A0999. BENTON et al. v. SAVANNAH AIRPORT
COMMISSION.
(525 SE2d 383)

PHIPPS, Judge.

Rebecca Cone Benton and Mary Elizabeth Cone Benton sued the Savannah Airport Commission for damages to their property allegedly caused by increased air traffic and noise from the Savannah Air-

port. In an order entered on September 26, 1996, the trial court dismissed the Bentons' 42 USC § 1983 claim without prejudice because it was not ripe for adjudication and granted summary judgment against the Bentons on their claims under the state and federal Relocation Acts. In an order entered on September 16, 1998, the trial court granted summary judgment to the Commission on the Bentons' claims for inverse condemnation and nuisance. The Bentons appeal both orders. We affirm the trial court's grant of summary judgment to the Commission on the state and federal Relocation Act claims and the claims for inverse condemnation and nuisance. We reverse the trial court's dismissal of the § 1983 claim.

The Bentons own approximately 200 acres of unimproved real property located in Chatham County. In 1947 or 1948, the property was acquired by the father of Rebecca Cone Benton, who was also the husband of Mary Elizabeth Cone Benton. In 1962, Mr. Benton conveyed an interest in some or all of the property to his wife. Mr. Benton died in 1979. Mary Elizabeth Cone Benton conveyed an interest in some of the property to Rebecca Cone Benton in 1983.

On November 28, 1994, the Bentons served the Commission with an ante litem notice under OCGA § 36-33-5. On January 3, 1996, the Bentons filed a complaint, alleging that the air traffic and noise in the immediate vicinity of their property had increased significantly during the period in which they owned the property, leaving them with property that can be put to no productive use. The Bentons sought monetary damages for each of their claims.

The Commission operates the Savannah International Airport in Chatham County. The Savannah Airport has two main runways, identified as Runway 9/27 and Runway 18/36. Runway 9/27 has been in operation since 1941, when it had an operational length of 2,939 feet and served military aircraft. In 1964, Runway 9/27 was extended to its current length of 9,351 feet. Runway 18/36 became operational in 1967 and is 7,001 feet long.

The Bentons' property is west of Runway 9/27. The aircraft that fly over or near their property predominately use Runway 9/27 for takeoff and landing. According to the Executive Director of the Commission, there has been no change in the patterns or paths of aircraft since prior to 1992. Based on airport traffic records maintained by the Federal Aviation Administration air traffic control tower, the number of flight operations at the Savannah Airport decreased by 39 percent between 1992 and 1996.

Aircraft operating in the United States are subject to strict noise certification requirements. They are certified as meeting Stage 2 or Stage 3 noise requirements, with Stage 3 aircraft being quieter. From August 1992 to August 1996, the number of Stage 2 operations at the Savannah Airport decreased from 45.13 percent of all airport opera-

tions to 24.61 percent. During that same period, the number of Stage 3 operations increased from 54.87 percent to 75.39 percent.

1. The Bentons contend the trial court erred by dismissing their § 1983 claim, which was based on an alleged taking of their property by the Savannah Airport. The Commission responds that the trial court correctly dismissed the § 1983 claim because it was not yet ripe for adjudication.

The Fifth Amendment to the United States Constitution precludes the taking of private property for public use without just compensation. If a state provides an adequate procedure for seeking just compensation, a property owner cannot assert a claim under the Just Compensation Clause until it has used the state procedure and has been denied just compensation.[1]

Georgia law provides a procedure for obtaining compensation for the inverse condemnation of one's property.[2] In their complaint, the Bentons asserted an inverse condemnation claim and a § 1983 claim. They were entitled to plead both claims alternatively, regardless of any inconsistencies that may exist between the two causes of action.[3] When the trial court issued its order on the motion to dismiss, the Bentons had not yet pursued their state inverse condemnation claim to determine if it would result in unjust compensation (or no compensation at all). But that claim was pending, and its adjudication was the only prerequisite for making the § 1983 claim ripe for adjudication.

In this situation, the trial court should defer a ruling on the motion to dismiss until the state inverse condemnation claim is adjudicated, thus allowing the plaintiff to proceed with both claims in the same lawsuit. Once the inverse condemnation claim has been disposed of, the trial court can consider the § 1983 claim on its merits.

Based on our holding in Division 3, infra, we reverse the trial court's dismissal of the Bentons' § 1983 claim and remand the case for consideration of that claim.

2. The Bentons claim the trial court erred in granting summary judgment against them on their claims under the Uniform Relocation Assistance & Real Property Acquisition Policies Act (the URA)[4] and the Georgia Relocation Assistance & Land Acquisition Policy Act.[5] The trial court ruled that the Commission was entitled to judgment

---

[1] *Williamson County Regional Planning Comm. v. Hamilton Bank*, 473 U. S. 172, 195 (105 SC 3108, 87 LE2d 126) (1985).

[2] Ga. Const. of 1983, Art. I, Sec. III, Par. I; *Adams v. City of Atlanta*, 253 Ga. 581, 582 (2) (322 SE2d 730) (1984).

[3] OCGA § 9-11-8 (e) (2); *Utica Mut. Ins. Co. v. Kelly & Cohen, Inc.*, 233 Ga. App. 555, 556 (504 SE2d 510) (1998).

[4] 42 USC § 4601 et seq.

[5] OCGA § 22-4-1 et seq.

on both claims because the Bentons had failed to exhaust the appropriate administrative remedies.

In support of their claim under the URA, the Bentons contend the Commission violated 42 USC § 4651, which sets forth procedures to be followed by federal agencies in seeking to acquire land. The Bentons assert no other claims under the URA. The provisions of 42 USC § 4651 do not, however, create a private right of action in landowners.[6] Instead, the section is no more than a statement by Congress of what it perceives to be the preferred method of dealing with landowners when the government wants to acquire their land.[7] As a result, the Bentons have no claim under the URA and the trial court properly granted summary judgment to the Commission.

The Georgia Relocation Assistance & Land Acquisition Policy Act sets forth procedures to be followed by state agencies in acquiring property for federal-aid works projects. The Bentons contend the Commission violated OCGA § 22-4-9, which provides that a state entity shall be guided by the federal land acquisition procedures to the greatest extent possible. They also reference OCGA § 22-4-8, which allows a prevailing plaintiff to recover litigation expenses incurred in an inverse condemnation action involving a federal-aid project.

OCGA § 22-4-9 does not create a private right of action in favor of a landowner, but merely addresses policies that should guide state agencies when they acquire real property for federal-aid projects. The Bentons have no cause of action under this section. Nor can the Bentons seek compensation under OCGA § 22-4-8 because they have not prevailed in their inverse condemnation action. See Division 3, infra. We affirm the grant of summary judgment to the Commission on this issue.

3. The Bentons challenge the trial court's grant of summary judgment to the Commission on their inverse condemnation claim. The Commission argues that the trial court correctly determined that the inverse condemnation claim was barred by the statute of limitation.

The Bentons' inverse condemnation claim is subject to the four-year statute of limitation set forth in OCGA § 9-3-30.[8] The complaint was filed on January 3, 1996; therefore, to avoid the statute of limitation bar, the cause of action must have accrued after January 3, 1992.

The Commission submitted evidence from its Executive Director

---

[6] 42 USC § 4602 (a); *United States v. 410.69 Acres of Land*, 608 F2d 1073, 1074, n. 1 (5th Cir. 1979).

[7] Id.

[8] *City of Atlanta v. Starke*, 192 Ga. App. 267, 268 (1) (b) (384 SE2d 419) (1989).

showing that the number of flights of noisier Stage 2 aircraft declined from 1992 to 1996. In addition, although the number of flights of Stage 3 aircraft increased during the same period, the total number of flight operations at the Savannah Airport decreased by 39 percent between 1992 and 1996.

The Bentons did not submit any evidence to contradict the evidence presented by the Commission. The Commission's evidence regarding

> the frequency of flights, flight patterns, and reduction in numbers of flights of Stage 2 aircraft[ ] is sufficient to show there has been no increase in the nuisance over [the Bentons'] property[,] and, if [the Bentons] had a cause of action, it accrued more than four years prior to the filing of their complaint.[9]

By coming forward with this evidence, the Commission discharged its burden on summary judgment.[10] The Bentons cannot rest on their pleadings, but must point to some evidence that the Commission's information is inaccurate or that the overall reduction in noise levels does not apply to their property.[11] Because the Bentons submitted no evidence on this issue, we find that the trial court correctly granted summary judgment to the Commission on the inverse condemnation claim.

4. Although the Bentons claim the trial court erred by granting summary judgment on their nuisance claim, they fail to address the trial court's basis for its ruling — that the nuisance claim is barred by the statute of limitation.

To address this claim, we must first determine if the operation of an airport constitutes a continuing or permanent nuisance. A continuing nuisance "is not permanent in its character, but is one which can and should be abated by the person erecting or maintaining it."[12] If the operation of the Savannah Airport is a continuing nuisance, every continuance of the nuisance is a fresh nuisance for which a new action will lie.[13] The damage caused by a permanent nuisance is complete at the time the nuisance is created and gives rise to only one cause of action, which accrues immediately upon the creation of the nuisance.[14]

---

[9] *Southfund Partners v. City of Atlanta*, 221 Ga. App. 666, 667-668 (1) (472 SE2d 499) (1996).

[10] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[11] Id.; *Southfund*, supra at 668.

[12] *City Council of Augusta v. Lombard*, 101 Ga. 724, 727 (28 SE 994) (1897).

[13] Id.

[14] Id.

Whether an airport is considered to be a permanent nuisance will depend on the relevant circumstances.[15] If the offending noise and traffic are relatively constant, the nuisance is permanent. Where the nuisance is intermittent or becomes greater over time, it may be considered a continuing nuisance.

When Runway 9/27 was extended to its current length in 1964, the noise and traffic associated with its use necessarily constituted an injury to the Bentons' property. There has been no change in the patterns or paths of aircraft since prior to 1992. In addition, the Commission has established, and the Bentons have not disproved, that the flight operations at the Savannah Airport decreased during the four-year period preceding the filing of the complaint. As a result, there is no fresh nuisance on which to base a cause of action.[16]

Given these facts, we find that the Bentons' nuisance claim accrued in 1964 when Runway 9/27 became operational at its present length, at which time the damage to the property was complete and capable of being fully compensated.[17] We therefore affirm the trial court's holding that the Bentons' nuisance claim is barred by the applicable four-year statute of limitation.

*Judgment affirmed in part and reversed in part and case remanded. Pope, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 16, 1999 —
RECONSIDERATION DENIED DECEMBER 16, 1999 — 

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert,* for appellants.

*Rebecca C. Benton,* pro se.

*Fincher & Hecht, Steven M. Fincher, Brennan & Wasden, Joseph P. Brennan,* for appellee.

---

[15] See *Southfund,* supra at 669; see also *Provident Mut. Life Ins. Co. &c. v. City of Atlanta,* 938 FSupp. 829 (N.D. Ga. 1995) (noise and dust generated by planes must have been obvious from first use of runway).

[16] Id.

[17] *Southfund,* supra.